**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-05-00729-005-PCT-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Blanca Herrera, | |
| Defendant. | |

Pending before the Court is Defendant Blanca Herrera's ("Herrera") motion for compassionate release (Doc. 435), which the government opposes (Doc. 442).  For the following reasons, the motion will be denied.

## RELEVANT BACKGROUND

A.    Underlying Crime

In 2008, Herrera was convicted via guilty plea of second-degree murder.  (Docs. 315, 321.)  The underlying facts, which Herrera admitted in the factual basis of her plea agreement (Doc. 320 at 6-7), are as follows.

In July 2005, Herrera was inside the home of a co-defendant, Jeremy Hoffman, on the Fort Apache Indian Reservation.  Hoffman was a member of a drug trafficking organization.  Also present in Hoffman's home was the victim, M.B.  After Hoffman came to suspect that M.B. was an informant working for law enforcement, he began striking M.B. and calling her a "snitch."  As the attacks intensified, Herrera provided assistance to Hoffman—among other things, she "gave a rope and plastic sheets to Hoffman" and

"helped Hoffman tie the victim's hands behind her back by holding the victim's arms." At some point in the melee, another co-defendant tried to suffocate M.B. by placing a plastic bag over her head. Eventually, yet another co-defendant tied a belt around M.B.'s neck, tied the other end of the belt to a door, and stood on M.B.'s neck until she appeared dead. Hoffman then poured bleach down M.B.'s throat "to be sure."

Once M.B. was dead, Herrera helped dispose of M.B.'s body, which was stuffed into a raft, then wrapped in a sleeping bag, and then buried in a hole in Hoffman's backyard. Afterward, Herrera tried to destroy evidence by using bleach to remove M.B.'s blood from Hoffman's house.

The judge who oversaw Herrera's case, Judge Martone, imposed a sentence of 300 months' imprisonment. (Docs. 315, 321.)

B.   Compassionate Release Request

According to the Bureau of Prisons' ("BOP") inmate locator website, Herrera's projected release date is December 10, 2026.

At some unspecified point in 2020, Herrera submitted an administrative request for compassionate release to the BOP. (Doc. 435 at 3.) On August 28, 2020, this request was denied. (*Id.*)

On September 2, 2020, Herrera submitted a one-paragraph request for reconsideration. (*Id.* at 2.) She sought release "based on my current BMI and COVID-19 pandemic" and stated that "I am a high risk to contract the virus due to the environment I live in prison." (*Id.*) It is unclear whether the BOP has acted on this reconsideration request. (*Id.*)

On September 15, 2020, Herrera filed a *pro se* motion for compassionate release with this Court. (Doc. 435.) In this motion, Herrera also requested the appointment of counsel. (*Id.*) However, the Federal Public Defender's office ("FPD") subsequently issued a notice stating that it could identify "no basis for appointment of counsel" because Herrera's motion did not identify any "extraordinary and compelling circumstances" that might justify compassionate release. (Doc. 436.)

On September 22, 2020, Herrera wrote a letter to the FPD renewing her request for appointment of counsel.  (Doc. 438.)

On October 15, 2020, the government filed an opposition to Herrera's motion for compassionate release.  (Doc. 442.)  Herrera did not file a reply.

## DISCUSSION

"The statute authorizing compassionate release as it exists today was first enacted as part of the Comprehensive Crime Control Act of 1984."  *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020).  "That original statute, unlike the current law, gave BOP exclusive power over all avenues of compassionate release.  For over 30 years any motion for compassionate release had to be made by the BOP Director."  *Id.*

This statutory framework changed in 2018, when Congress passed the First Step Act.  *Id.* at 233.  Among other things, the First Step Act removed "the BOP as the sole arbiter of compassionate release motions."  *Id.*  Now, although the "BOP is still given the first opportunity to decide a compassionate release motion, and may still bring a motion on a defendant's behalf, under Congress' mandate a defendant now has recourse if BOP either declines to support or fails to act on that defendant's motion."  *Id.*

The standards for evaluating a compassionate release motion are set forth at 18 U.S.C. § 3582(c)(1)(A).  Among other things, the court "may" grant a compassionate release motion and reduce a defendant's term of imprisonment if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," the court finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A)(i).  The applicable policy statement, in turn, is found at USSG § 1B1.13.  It provides that the court may reduce the term of imprisonment if three conditions are met: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement."  *Id.*

Here, the government concedes that Herrera's "obesity constitutes an extraordinary and compelling reason allowing compassionate release during the current pandemic" (Doc. 442 at 1) but argues that Herrera is not entitled to relief for other reasons.  The Court agrees and concludes, in its discretion, that Herrera's motion should be denied.  As noted, § 3582(c)(1)(A) requires the Court to consider the "applicable policy statements issued by the Sentencing Commission," and one of the considerations specified in the relevant policy statement, USSG § 1B1.13, is whether the defendant poses a danger to the safety of the community.  Herrera has not met her burden of demonstrating the absence of such danger.  She was an active participant in the gruesome torture-murder of a suspected police informant.  She helped tie the victim's arms behind the victim's back, supplied the sheets used to catch the victim's blood, watched as others strangled the victim to death and poured bleach down the victim's throat, and then destroyed evidence in an effort to conceal the crime.  It is not a stretch to say that the type of person who could engage in such conduct might remain a danger to the community even after spending 15 years in prison, and Herrera has submitted no evidence of rehabilitation.

Section 3582(c)(1)(A) also requires the Court to consider the § 3553 sentencing factors, to the extent they are applicable, and the Court concludes those factors provide an independent reason for denying relief here.  Some relevant considerations under § 3553 include "promot[ing] respect for the law" and "provid[ing] just punishment."  It would not promote respect for the law or result in just punishment to authorize Herrera's release from prison only 15 years after committing a brutal torture-murder.  *Cf. United States v. Gotti*, 433 F. Supp. 3d 613, 619-20 (S.D.N.Y. 2020) ("A court is not required to reduce a sentence on compassionate release grounds, even if a prisoner qualifies for such reduction because of his medical condition . . . .  The First Step Act was drafted using the word 'may,' not 'must.'  In the end, whether to reduce a sentence is a matter that rests in the discretion of the court.  And as a matter of my discretion, I do not believe that Peter Gotti's sentence should be reduced, notwithstanding his compromised medical condition . . . [because he] headed one of the most vicious and violent organized crime organizations in New York for

a period of years.").

Accordingly, **IT IS ORDERED** that Herrera's motion for compassionate release (Doc. 435) is **denied**.

Dated this 16th day of December, 2020.

Dominic W. Lanza
United States District Judge